BLUEHILL ACADEMY *versus* ELLIS, *Administrator*.

The treasurer of a corporation, having obtained permission to borrow the funds in his hands, upon giving his note with a mortgage, is not, by the giving of his note *without* the mortgage, exonerated from liability as *treasurer* for the amount.

Charges made annually by the treasurer against himself in the corporation books, for annual interest on such amount, brought down to a period within six years from the date of the writ, are recognitions of the debt, by which the limitation bar is removed.

Though, upon the death of such treasurer, and the insolvency of his estate, the corporation should present the *note* to the commissioners, with the usual oath that *it was due and unsecured*, they would not thereby be precluded from afterwards abandoning the note and claiming upon the account, as due from the treasurer in his official capacity.

ASSUMPSIT. Plea, general issue and limitation. The facts were agreed, upon which the court should enter judgment as the law requires.

The defendant's intestate was clerk and treasurer of the Academy from Aug. 1831, to his death in April, 1848, having the custody of its securities, books and papers. It was one of its by-laws, that no part of the funds should be loaned by the treasurer, except on mortgage of real estate, of double the value of the sum loaned.

It was the duty of the treasurer to take notes on annual interest for all money loaned, and to see that all deeds and other instruments of value were duly executed, and to keep, in his own hands, "until mortgages were duly given, all the funds proposed to be loaned; and also to collect the interest annually."

In Aug. 1831, the intestate obtained leave of the trustees to borrow about 600 dollars, of the funds in his hands, upon a mortgage of real estate, and George Stevens was authorized to see that the security was properly given. Under that arrangement the intestate, on the first day of September, 1831, took to his own use $626,23, for which sum, with annual interest, he placed upon the files of the corporation his own negotiable note, and drafted a mortgage of real estate. The draft was folded in the form of a deed, and filed as a mortgage from him to

the Academy, and placed among the mortgages, but it was never executed.

Mr. Stevens was appointed, in 1835, to examine the securities due to the Academy, and the state of the funds, and to audit the treasurer's account. He reported in February, 1839, as follows: "I find the accounts in the best order, well vouched, and have examined the securities for money loaned. It appears to be perfectly secured by mortgage and otherwise." This report was accepted. Mr. Stevens would testify that, while pursuing his examination, the intestate gave him a bundle of papers, purporting to be mortgages belonging to the Academy, among which was said draft, and represented that it was a mortgage to secure his said note; and that he, the said Stevens, confiding in that representation, omitted to examine the paper.

The intestate charged himself on the corporation books for the $626,23, and also for the interest annually, up to, and including that which became payable Sept. 1, 1843. The credits, which he gave to himself on the books, were sufficient to balance the said charges for interest up to Sept. 1, 1841, but not afterwards.

It did not, until after the intestate's death, come to the knowledge of the trustees that the mortgage was not executed, or that any of the annual interests remained unpaid. The intestate's estate was represented insolvent. The new treasurer of the Academy presented the note to the commissioners, and made oath that it was due without deduction, and that there was no security for the same. The commissioners allowed it. The defendant filed his objection with the requisite notices; and thereupon this action for money had and received was commenced, June 11, 1849.

The plaintiffs were allowed, against the defendant's objection, to add a count upon the original account.

*Robinson* and *Hinckley*, for the plaintiffs.

The note was never accepted. It never became the property of the Academy. The intestate had no right to appropriate the money to his own use, except on giving a mortgage,

which was never done. The money was taken, therefore, not only without authority, but in violation of the by-laws and of the trust confided. The note was a mere nullity. The money withdrawn is therefore to be treated as still in his hands as treasurer. So he himself considered it. At least he did not consider the note as a payment for it, for he charged himself the amount with annual interest in the corporation books. The last interest was charged to him, by himself, in said books, Sept. 1, 1843. This was a recognition of the debt at that time, and it was within six years from the date of the writ, and displaces the limitation bar.

*C. J. Abbott*, for the defendant.

This action is in the nature of an appeal from the commissioners of insolvency. The claim presented there, and that claim alone, is the one to be acted upon here. But that claim was the note, and nothing else. The plaintiffs there made an election to rely on the note. That election was made after they had discovered there was no mortgage. For their treasurer made oath, " that it was unsecured," and was due. By that election, thus understandingly made, they must be bound. It was a waiver of all objection, for want of a mortgage. But now they disclaim the note, and say it was never valid. It is too late. By the note thus accepted, it being a negotiable one, the account was paid. Besides, the note was always valid, at least from the time when the plaintiffs had reasonable opportunity to discover, from examination of the papers, that there was no mortgage.

The account, which the plaintiffs wish to revive, was not a running or mutual account. Its entries were only on one side. It was a specific charge and stood alone. 4 Maine, 337. It was the intestate's private account; not his account as treasurer.

It is not to be viewed as an account stated, for it was made by one party only.

The schedule for the appeal exhibited only the note. The plaintiffs' motion to amend it, by substituting the account, is not to be allowed. If so, it introduces a new claim, never

Bluehill Academy *v.* Ellis.

sworn to, and never acted upon. And if due, it may be collater-
ally secured. The law requires such security to be made
known. Other creditors would be interested in such security.

The charges of interest made by the intestate against him-
self on the corporation book, for the years 1842 and 1843,
were no payment, because there were no credits to set
against them. They could not, therefore, defeat the limita-
tion bar. The Stat. c. 146, § 19, requires the new prom-
ise or acknowledgment of indebtedness to be *express*, made in
writing, and signed by the party.

TENNEY, J. — It was not known to the trustees, before
the death of the defendant's intestate, that the note signed by
him, was not secured by a mortgage of real estate, according
to the provision in the by-laws; notwithstanding an auditor
was appointed on April 15, 1835, to examine the accounts,
who reported on Feb. 28, 1839, that the accounts of the
treasurer were in the best order, well vouched, and that on
examination, the securities for money loaned, appeared to be
safely secured by mortgage and otherwise, and the report was
accepted by the trustees. The mortgage deed made out, cor-
responding with the note, but not executed, was placed upon
the file with other mortgages; and having such a label upon
it, as it was proper that it should have, if executed and made
in all respects perfect, it was supposed by the auditor to be
effectual, and he did not examine it, as it was his duty to
have done. The note not having been secured according to
the requirement of the by-laws, could not be considered as
received by the trustees without any action upon their part,
and without knowledge of its true condition. The books of
the treasurer show that the intestate did not treat the note as
having passed from him to the trustees; he charges himself
with the same sum as that named in the note under the same
date, being money loaned by the direction of the trustees, and
afterwards from time to time charges himself with the annual
interest on the principal to Sept. 1, 1843. This sum, thus
charged as principal, he received, as it is admitted, and ap-

propriated to his own use.   There is no reference to the note either on the credit or debit side of his book.   It was undoubtedly the design of the intestate to have the mortgage executed and so placed that it would be regarded as delivered, for security of the note, which was perfect excepting that it had not been accepted by the payees.   But it was neglected from time to time and was never done.   He was responsible for this money as the treasurer, after he had received it; and it is manifest  that he did not consider, that his official responsibility had ceased, and, that his liability as a borrower had commenced, although he had so far availed himself of the authority of the trustees to lend the money, as to make use of it as a loan to him.   As the note was not understood by the intestate, who knew all the facts, to have become the property of the trustees, and as it cannot be treated as having  been taken by them constructively in violation of the by-laws, it was not an extinguishment of his liability for the money received, which was intended as its consideration.

Upon the hypothesis, that the note never became the property of the institution, it is insisted, that this action is not maintainable, inasmuch as the claim presented to the commissioners of insolvency, was the note, and not a sum appearing due upon the treasurer's books.   Great liberality has been allowed in adjusting the mutual claims, existing between creditors of a deceased insolvent and his estate, with a view, that one should be a set-off to the other, as far as it would extend, in order that perfect justice should be done.   And with this view the technical rules, which have been inflexible in ordinary suits, have been made in some measure to yield.   *McDonald* v. *Webster*, 2 Mass. 498 ; *Jarvis* v. *Rogers*, 15 Mass. 389 ; *Fox* v. *Cutts*, 6 Greenl. 241.   Judge Mellen, in the opinion of the Court, in *Lyman, Adm'r,* v. *Estes*, 1 Greenl. 182, says, " our statutes relative to the settlement of insolvent estates, contemplate a fair adjustment of all demands subsisting between the deceased and his creditors at the time of his death, so that the balance justly due to the estate may be collected." " The strict principles of the common law, and technical

rules of pleading must not be applied to cases, where the parties have not mutual remedies at law, which they can enforce as in cases of insolvency. *Knapp, Adm'r,* v. *Lee,* 3 Pick. 452. As promotive of the same purpose, the R. S. chap. 109, sect. 20, have provided, that when an appeal is taken from the decision of the commissioners, and the creditor shall prosecute his claim in an action for money had and received, the creditor may annex to his writ a schedule of all his claims, or the nature thereof; or he may file in the office of the clerk of the court to which the action is brought such schedule, fourteen days at least before the return day of the writ; and the administrator, at such time as the court may direct, may file an abstract of all the demands which the deceased may have left against the supposed creditor; and judgment shall be rendered for either party, as the case may be, upon the balance to be ascertained at the trial.

The R. S. chap. 115, sect. 9, provide, " that no summons, writ, declaration, plea, process, judgment or other proceedings in courts of justice shall be abated, arrested or reversed for any kind of circumstantial errors, or mistakes, when the person and case may be rightly understood by the court, nor for want of form only, and which by law might have been amended." Under this provision of the statute, when the court have jurisdiction of the persons, and the subject-matter, an amendment of a declaration in a writ can be made, by inserting a new count, if it shall appear that it is for the same cause of action. Judge PARKER says, in *Ball* v. *Claflin,* 5 Pick. 304, " The new count offered must be consistent with the former count or counts, that is, it must be of the like kind of action, subject to the same plea, and such as might have been originally joined with others. It must be for the same cause of action; that is, the subject-matter of the new count must be the same as that of the old; it must not be for an additional claim or demand, but only a variation of the form of demanding the same thing." *Eaton* v. *Whitaker,* 6 Pick. 465; *Clark* v. *Lamb, Ibid.* 512.

In *Vancleef* v. *Therasson & al.* 3 Pick. 12, which was an

action on account annexed for goods sold and delivered, and for which a negotiable note had been given, it was held that the plaintiff could not amend the writ by inserting a count upon the note, being for a different cause of action, but was entitled to recover, as the writ stood, the transaction being in New York, where the note is not payment of the account. By the law of Massachusetts and of this State, the taking of a negotiable note for an existing account, is a discharge of the latter, unless otherwise agreed by the parties. It follows, if the note taken had no validity, the supposed consideration of it stands unaffected.

The case of *Barker & al.* v. *Burgess & als.* 3 Metc. 273, was where an action was commenced against a firm on a note, which one member had given in the name of the company, embracing matters against him individually. The defendants having given evidence, that the note was not valid and binding upon the partnership, the plaintiffs asked leave to amend their declaration, by inserting the common counts, for goods sold and delivered, for labor and services, &c., with a view of filing a bill of particulars, embracing so much of the original consideration of the note, as arose from the liability of the partnership on their own account. This amendment was granted and approved by the whole court, under the provisions of the statute, which in this respect were substantially similar to that of this State.

The note of the defendant's intestate, never having been received by the trustees, so as to discharge the claim against him as treasurer for the same amount, his original liability remained unimpaired. If an action had been brought against him in his lifetime, and the writ contained only a count upon the note, and it should be found that the note was not valid for any cause, a count for the consideration, of money had and received would be for the same cause of action and admissible.

It could not have been the design of the Legislature, when they allow an appeal from the decision of the commissioners of insolvency, by authorizing an action with only the general

Bluehill Academy *v.* Ellis.

equitable count of money had and received, to be less liberal, touching the form of the proceedings, than in providing for amendments in the ordinary proceedings in court between living parties, and to exclude forever from any consideration in cases of insolvency, in a manner which can be effectual, just demands against the estate. But upon a strict construction of the statute it is apprehended, that this objection of the defendant cannot prevail. It was undoubtedly intended, that the action at law upon an appeal should be for the claim presented to the commissioners, and allowed or rejected by them. If a writ could be amended by the insertion of a new count, it is because the new count is for the same cause of action as that of the former. If it is adjudged for the same claim on a question of amendment, it cannot fail to be so regarded in the case of an appeal like the present.

The demand intended to be presented to the commissioners, was for money in the hands of the intestate at the time of his death belonging to the Academy. The evidence presented to the commissioners was a note dated Sept. 1, 1831. The money, appearing due from the intestate upon his books, as money loaned by the direction of the trustees on the day of the date of the note and for the same amount, was the same, which was the consideration of the note. The proof relied upon in support of the latter, being different from that presented to the commissioners, cannot change the character of the claim, as the note was not an extinguishment of his former liability.

The distinction attempted between the liability of the intestate in his individual and official capacity, has no substantial foundation. His estate is answerable for whatever moneys were in his hands at the time of his death, whether he held them in his fiduciary character of treasurer, or as the borrower of the amount by the authority of the trustees. It is only in the mode adopted by the plaintiffs, that they can have an adjustment of their claims against his estate, whether he is liable in one capacity or the other. The books in either case are equally evidence.

The charge of the intestate against himself on Sept. 1, 1831, of the sum of $623,26, is evidence, that he was then liable for that sum ; the subsequent charges of the annual interest from year to year upon this sum was a recognition that it was unpaid. The credits of payments made, show that there was between the intestate and the plaintiffs an open account current. In such a case ·the cause of action accrued at the date of the last item proved in the account. R. S. c. 146, § 9. The last item in the account charged against the intestate, by himself, was on Sept. 1, 1843. This was within six years of his death, and the statute of limitations cannot be a defence. According to the agreement of the parties, there must be entered                *Judgment for the plaintiffs.*